IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LVL CO., LLC,                          )
                                       )        5:18-cv-2695
                    Plaintiff,         )
                                       )
        v.                             )
                                       )
CITY OF EASTON,                        )
                                       )
                    Defendant.         )

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT**

Defendant, City of Easton ("Defendant Easton"), through its attorneys, Norris, McLaughlin & Marcus, P.A., submits this brief in support of its Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    **Statement of Facts**

On June 26, 2018, Plaintiff, LVL CO., LLC ("Plaintiff") filed a Complaint against Defendant Easton asserting various claims purportedly arising out of a settlement agreement between Plaintiff's alleged predecessor-in-interest, Pennsylvania Media LLC ("PA Media"), and Defendant Easton, relating to a separate lawsuit previously filed in this Court at Docket No. 14-cv-04707 ("the PA Media-Easton Litigation").  The facts can be summarized as follows.

Plaintiff is in the business of leasing and purchasing off-premise signs (*i.e.*, billboards).  In August of 2015, Plaintiff allegedly purchased the assets of PA Media, including PA Media's rights in the PA Media-Easton Litigation.  Thereafter, in March and April of 2016, a Settlement Agreement and Full and Final Release of all Claims ("the Settlement Agreement") was executed by the parties to the PA Media-Easton Litigation resolving that law suit.  (Complaint, ¶¶ 1-3, and Exhibit A to Complaint).

The relevant portions of the Settlement Agreement provide as follows:

### Section 1.  Dismissal

Plaintiffs acknowledge and agree that the parties stipulated to the dismissal of the Action and that they will request the Court to enter a dismissal of the Action, **WITH PREJUDICE,** based upon the mutual promises of the parties reduced to writing herein and the occurrence of the Condition (as hereinafter defined).

### Section 2. Consideration

In consideration of Plaintiffs' release set forth below in Section 3 below (sic), Easton has agreed to lease to PMedia land to erect and maintain a billboard. Easton in further consideration of the Plaintiffs' release set forth in Section 3 below has consented to PMedia's assignment of said lease to LVL Co, LLC.  The assigned Lease and Addendum (hereinafter "the Lease") between Easton and LVL Co, LLC is attached hereto as Exhibit "A" an incorporated herein by reference.  It is further understood and agreed that Easton's entering into the Lease is intended to cover fully all of Plaintiffs' claims for damages, attorneys' fees, legal costs and expenses, and is in full accord, satisfaction, and final compromise of all disputed claims between the parties for monetary, legal and equitable relief, interest, attorney's fees, and legal costs and expenses.

### Section 10. Miscellaneous

**(A) Severability.**  Should any provision of this Agreement be held to be illegal or unenforceable by a court of competent jurisdiction, it shall be deemed severed from the Agreement and the remaining provisions shall remain fully enforceable.

**(C)  Assignment.**  Neither this Agreement nor any rights or obligations hereunder may be assigned by either party without the express written consent of the other.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, successors, and assigns.  The rights under the Lease have been granted to LVL Co., LLC, as assignee of PMedia.

### Section 11.  Signature Authority

The signatories below warrant that they are fully authorized to sign this Agreement on behalf of themselves, if they are signing in their individual capacity, or on behalf of the entity that they represent, if they are signing on behalf of an entity.

**Section 15.  Condition:**  The Release herein set forth is expressly postponed until, and conditioned upon, the Billboard receiving all applicable permits, licenses and permissions to be erected as a double sided electronic LED Digital Billboard in the identified location, or other location acceptable to Plaintiffs and LVL Co., LLC. The foregoing is called the "Condition".

Pursuant to the terms of the Settlement Agreement, on April 27, 2016, Plaintiff and Defendant Easton entered into a Lease Agreement and Addendum ("the Lease").[1]  (Complaint ¶ 10).  The Lease provides for Plaintiff to Lease from Defendant Easton a portion of Tax Parcel M10 2 3 0310E (referred to by Plaintiff as "the Proposed Site") for the purpose of erecting and maintaining a billboard. (Complaint ¶ 9; Lease ¶ 1.  The Lease is conditioned on Plaintiff securing final, unappealable approvals from all applicable federal, state, county and municipal governmental bodies for the billboard by July 31, 2016, unless otherwise extended

---

[1] Plaintiff failed to attach a copy of the Lease to its Complaint and therefore Defendant Easton has attached a copy of this document as Exhibit A to this Brief.  In considering a motion to dismiss, a district court is generally limited to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.  Pension Benefit Guar. Bd. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  However, a court may also consider "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Gordon v. Kohl's Dept. Store, 172 F.Supp.3d 840, 850 (E.D. Pa. 2016).

by the parties.  (Lease, Addendum ¶¶ 9, 10 & 15).  The term of the Lease is for 29 ½ years, but the term does not commence until 90 days after Plaintiff obtains all of the necessary permits and approvals for construction of the billboard.  (Complaint ¶ 28; Lease, Addendum ¶1).   The Lease provides that no rent is payable for the first 10 years of the term of the Lease, but thereafter rent is payable to Defendant Easton for the balance of the Lease term.   (Lease, Addendum  ¶2).  Finally, the Lease provides that "Plaintiff agrees to comply with all ordinances enacted by the City of Easton, in particular, the City of Easton Code…", provided however that Plaintiff retains the right to challenge any future ordinance enacted by Defendant Easton under certain circumstances.  (Lease, Addendum ¶ 11).

The Proposed Site identified in the Lease (and in the Settlement Agreement which incorporates the Lease) is owned by Defendant Easton and is located along Interstate 78 in the City's Expressway Transitional (ET) Zone.  (Complaint ¶ 9; Printout of zoning information for Tax Parcel M10 2 3 0310E attached hereto as Exhibit B (accessible by the public at https://easton-pa.zoninghub.com)).

Plaintiff alleges that the Proposed Site for the billboard identified in the Lease and Settlement Agreement is unacceptable because it cannot be legally permitted for a billboard due to federal regulations relating to billboards on interstate highways.  (Complaint ¶ 11).  Therefore, Plaintiff asserts that it has the right under the Settlement Agreement to select an alternate site for a billboard. Plaintiff has selected as an alternate site a property located on Pine Street in

Easton, Tax Parcel #L9SE2B 511 0310, which faces Easton's historic Centre Square ("the Centre Square location").  The Centre Square location is located in Defendant Easton's Downtown with Street Overlay Zone, not in the Expressway Transitional Zone.  (Printout of zoning information for Tax Parcel #L9SE2B 511 0310 attached hereto as Exhibit C (accessible by the public at https://easton-pa.zoninghub.com)).  Additionally, the Centre Square location is not owned by Defendant Easton, but instead is owned by a third party.  (Complaint ¶ 14).

Plaintiff alleges that it advised Defendant Easton that it had secured an acceptable alternative site for the billboard in the Centre Square location, however Defendant Easton has refused to approve the Centre Square location as an acceptable alternative site.  Defendant Easton has offered Plaintiff other locations as an alternative site for the billboard, but none of the locations offered have been acceptable to Plaintiff.  (Complaint ¶¶17 & 21).

Although not referenced by Plaintiff in its Complaint, it is a matter of public record that Defendant Easton's City Code ("the Code") places limitations on the location of signs.  Specifically, § 595-197(G) of the Code provides that "off-premises signs shall be prohibited in all zoning districts with the exception of the Expressway Transitional (ET) Zone."  See also, § 595-195(I)(1)(y) stating that "[t]he placement of off-premises signs shall be limited to the Expressway Transitional (ET) Zone."  A copy of the Code setting forth Defendant City's zoning laws is attached hereto as Exhibit D for ease of reference.

II.   **Questions Presented**

    A.   **WHETHER COUNT I OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT?**

    B.   **WHETHER COUNT II OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE CLAIM FOR AN UNCONSTITUTIONAL TAKING OF PRIVATE PROPERTY WITHOUT DUE PROCESS AND WITHOUT JUST COMPENSATION?**

III.   **Argument**

A motion to dismiss pursuant to Fed. R.C.P. 12(b)(6) may be granted where, accepting all well-pleaded facts in the complaint as true, the plaintiff is not entitled to relief.  Cowell v. Palmer Township, 263 F.3d 286 (3d Cir. 2001).  In ruling on a motion to dismiss, the Court should disregard rote recitals of the elements of a cause of action, legal conclusions and mere conclusory statements.  Allen v. DeBello, et al., 861 F.3d 433 (3d Cir. 2017).  Where, as here, on the face of the complaint, plaintiff fails to allege facts sufficient to state a claim for relief, the complaint should be dismissed.

    A.   **Count I of the Complaint should be dismissed because it fails to state a claim for breach of the Settlement Agreement.**

Count I of the Complaint alleges that "based upon [Defendant] Easton's refusal to accept Center Square as [Plaintiff] LVL's alternatively acceptable billboard site/location, [Defendant] Easton has violated the [Settlement] Agreement."  (Complaint ¶ 34).  Plaintiff's allegations, however, are legally insufficient to establish a claim for breach of the Settlement Agreement.

6

### 1. Plaintiff lacks standing to assert a claim for breach of the Settlement Agreement.

Plaintiff is not a party to the Settlement Agreement and therefore has no standing to assert a breach thereof[2]. <u>See</u>, <u>Petty v. Hospital Services Ass'n</u>, 967 A.2d 439 (Pa.Cmwlth. 2009) (under Pennsylvania law in order to have standing, party must show substantial, direct and immediate interest in the outcome of dispute). On its face, the Settlement Agreement is between parties that do ***not*** include Plaintiff and resolves litigation to which Plaintiff was ***not*** a party. Although the Settlement Agreement – through the assignment by PA Media and consent by Defendant Easton – bestowed upon Plaintiff the right to enter into the Lease, Plaintiff's claims are not based on any assertion of ***its own rights*** under the Settlement Agreement or Lease. Instead, Plaintiff asserts that it has the right to enforce ***PA Media's rights*** under the Settlement Agreement. However, Plaintiff's allegations attempting to establish that it "stands in the shoes" of PA Media vis-à-vis the Settlement Agreement are factually and legally insufficient.

The sum total of Plaintiff's allegations regarding its purported authority to assert PA Media's rights under the Settlement Agreement is that, in August of 2015, it purchased the assets of PA Media, including PA Media's rights and interest in the PA Media-Easton Litigation and that, as a result of this purchase, Plaintiff "is a predecessor/successor of [sic] interest to PA Media and is therefore entitled to

---

[2] To the extent Plaintiff's lack of standing goes to this Honorable Court's jurisdiction to hear this matter, Defendant Easton alternatively moves for dismissal under Fed. R. Civ. Proc. 12(b)(1). See, <u>Moore v. Angie's List, Inc.</u>, 118 F.Supp.3d 802 (E.D.Pa. 2015).

all of the rights that PA Media has under the [Settlement] Agreement with [Defendant] Easton." (Complaint ¶¶6 & 8). As an initial matter, it is patently unclear what is meant by a "predecessor/successor" in interest. Regardless, to the extent Plaintiff intends to allege that it is either a predecessor or a successor in interest to PA Media's rights under the Settlement Agreement, neither allegation is sufficient.

First, Plaintiff has alleged no facts supporting any allegation that it is PA Media's "predecessor" and, in any event, the Settlement Agreement by its express terms does not confer any rights or benefits on PA Media's predecessors. (Settlement Agreement, Section 10(C))[3]. Likewise, to the extent Plaintiff became a successor to PA Media's rights in the PA Media-Easton Litigation this occurred in *August of 2015*, which is approximately *8 months prior to the date the Settlement Agreement was executed*. Plaintiff could not have become a successor to any of PA Media's rights under the Settlement Agreement in August of 2015, because the Settlement Agreement did not even exist until April of 2016. The Settlement Agreement established new and different rights and obligations between PA Media and Defendant Easton as of April of 2016. There is no allegation that these new rights and/or obligations were ever transferred to Plaintiff, nor would any

---

[3] Notably, Plaintiff does not assert any rights under the Settlement Agreement as an assignee of PA Media. With the exception of the assignment of rights to the Lease – which Plaintiff does not rely on as the basis for its claims – the Settlement Agreement expressly prohibits the assignment of the parties' rights and obligations thereunder without the express written consent of the parties. Plaintiff has made no allegations of any such consent having been sought or given by any of the parties to the Settlement Agreement.

such allegation be sufficient to establish any rights under the Settlement Agreement, given the anti-assignment provisions contained therein.   (Settlement Agreement, Section 10(C)).

Moreover, the Settlement Agreement makes no reference whatsoever to PA Media having transferred its rights under the PA Media-Easton Litigation, or under the Settlement Agreement, to Plaintiff or anyone else.   Instead, PA Media affirmatively represented in the Settlement Agreement that it was aware of no other person or entity entitled to make a claim on its behalf in relation to Defendant Easton, (Settlement Agreement, Section 6), and that the individual signing on behalf of PA Media (Abraham Atiyeh, Manager) was fully authorized to do so. (Settlement Agreement, Section 11).   If, as alleged, Plaintiff had already obtained PA Media's rights in the PA Media-Litigation *prior* to the execution of the Settlement Agreement, then Plaintiff presumably chose to permit PA Media to enter into the Settlement Agreement in its own right without securing any rights (other than the Lease) to Plaintiff.   To the extent PA Media acted without Plaintiff's consent in entering into the Settlement Agreement in its own right, Plaintiff's dispute is with PA Media, not with Defendant Easton.

Whatever the relationship between Plaintiff and PA Media as of August of 2015 and whatever rights Plaintiff might have acquired in relation to the PA Media-Easton Litigation at that time, Plaintiff has failed to allege facts sufficient to establish any rights under the Settlement Agreement, other than Plaintiff's own

rights as assignee of the Lease specifically referenced therein.  As such, Plaintiff lacks standing to assert a breach of the Settlement Agreement based upon PA Media's rights thereunder.

### 2. Plaintiff has failed to allege facts sufficient to state a claim for breach of the Settlement Agreement.

Even if Plaintiff did have standing to assert PA Media's rights under the Settlement Agreement, the Complaint nevertheless fails to allege facts sufficient to establish a breach of that Agreement.   Under Pennsylvania law, settlement agreements are governed by basic contract principles.  Lesko v. Frankford Hospital-Bucks County, 15 A.3d 337 (Pa. 2011).  "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed."  Lesko, 15 A.3d at 341-342 (citing, Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982)).  It is for the court to interpret the meaning of an unambiguous contract based upon the terms of the agreement as manifestly expressed in the contract itself.  Id.

Additionally, the "fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself.  In determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect."  Lesko, 15 A.3d at 342 (internal citations omitted).  A court will not interpret one provision of a contract in a manner which nullifies another portion of the contract.  Id.

10

Applying these principles to the present case, it is clear that Plaintiff's breach of contract claim fails as a matter of law because, by its express terms, the Settlement Agreement does not obligate Defendant Easton to allow Plaintiff (or PA Media) to erect a billboard at the Centre Square location, or any other location of Plaintiff's unilateral choosing. Despite Plaintiff's bald assertion that the Settlement Agreement "inherently requires [Defendant] Easton to take all action within its control to insure that [Plaintiff] LVL secures a billboard site/location acceptable to it", (Complaint, ¶ 19), nothing in the Settlement Agreement comes remotely close to saying that. Instead, the Settlement Agreement in relevant part only obligates Defendant Easton to enter into the Lease with Plaintiff, which it indisputably did. (Complaint ¶ 10 and Settlement Agreement, Section 2). Absolutely nothing more was required of Defendant Easton under the express terms of the Settlement Agreement and Plaintiff's attempts to assert otherwise are utterly without basis.

Additionally, the Lease, which is incorporated into and made a part of the Settlement Agreement, likewise imposes no obligation on Defendant Easton to permit Plaintiff to erect a billboard on any site, other than the specific parcel of land identified in the Lease. That parcel of land is indisputably located in an area along Interstate 78, not on Easton's Centre Square or any other location randomly chosen by Plaintiff. Moreover, the Lease is expressly conditioned upon Plaintiff obtaining the necessary approvals from all applicable governing bodies to allow for the placement of the billboard at the Interstate 78 site which, by Plaintiff's own admission, it has failed to do. (Complaint ¶ 11). Notably, the Lease provides for no

alternative site and imposes no obligations whatsoever on Defendant Easton should this condition not be met.

Plaintiff points to a single provision in the Settlement Agreement – *i.e.,* the "condition" set forth in Section 15 of that document – as the sole contractual basis for its claim that Defendant Easton is somehow obligated to allow a billboard to be erected in ***any*** location that is unilaterally deemed acceptable by Plaintiff and/or PA Media.   (Complaint ¶ 9)[4].   However, based on the plain language of the Agreement, this condition does not impose any additional obligation on Defendant Easton. Instead, it merely conditions ***PA Media's release of claims*** on its ability to obtain the necessary approvals to erect the billboard in the "identified location, or other location acceptable to [PA Media] or [Plaintiff]." (Settlement Agreement, Section 15).   By its express terms, the condition ***only provides relief from PA Media's obligation*** to release its claims against Defendant Easton (and other released parties).   It does not create any affirmative right on the part of PA Media or Plaintiff to place a billboard anywhere they want, nor does it create any affirmative obligation on the part of Defendant Easton to allow them to do so.   <u>See</u>, <u>Lesko</u>, <u>supra</u>, (reference in settlement agreement to defendant purchasing an annuity to fund periodic payments merely created an option – not an obligation – for it do so).

---

[4] Plaintiff also references Section 1 of the Settlement Agreement, which required PA Media to request the Court to dismiss the PA Media-Easton Litigation with prejudice "based upon the mutual promises of the parties reduced to writing herein and the occurrence of the Condition (as hereinafter defined)."   However, it is a matter of public record that the PA Media-Easton Litigation was dismissed with prejudice in December 2015 by agreement of all parties.   Therefore, any condition placed upon the dismissal is moot as it was waived by PA Media when they agreed to dismiss the PA Media-Easton Litigation with prejudice.

Indeed, even if the Court could somehow construe the language of the Settlement Agreement to permit Plaintiff to unilaterally select Centre Square as a "alternatively acceptable" billboard location, such a provision would be unenforceable based on illegality and, therefore, would be deemed severed from the Settlement Agreement.   (Separation Agreement, Section 10(A), Severability).  See, Rittenhouse v. Barclay White Inc., 625 A.2d 1208, 1211 (Pa.Super. 1993) ("a contract which violates a statute is illegal and will not be enforced.").  Sections 595-195(I)(1)(y) and 595-197(G) of the City of Easton Code specifically prohibit off-premises signs in all zoning districts with the exception of the Expressway Transitional (ET) Zone.  It is a matter of public record that the Centre Square location on which Plaintiff seeks to place its billboard is located in the Downtown with Street Corridor Overlay Zone, not the Expressway Transitional (ET) Zone.  As such, any purported agreement which would allow the placement of a billboard at the Centre Square location would violate the Code and therefore be illegal and unenforceable.

Although Plaintiff makes the conclusory allegation that Defendant Easton "has the legislative power to approve the Centre Square site/location", Complaint ¶ 20, it cites no authority whatsoever for this proposition.  From a legal standpoint, Defendant Easton in fact does **not** have such authority, given that the allowance of a single, off-premises sign in a zone in which such signs are specifically prohibited would likely constitute impermissible spot zoning".  See, e.g., In re Realen Valley Forge Greenes Assoc., 838 A.2d 718 (Pa. 2003) ("a singling out of one lot or a small

area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment is invalid 'spot zoning'").  Moreover, the Code provides the exclusive mechanism by which any special exceptions and/or variances from zoning requirements may be pursued through application to the Planning Commission and/or Zoning Hearing Board.  Easton Code §§ 595-251, 595-252 and 595-257.  Circumventing these procedures by way of improper "contract zoning" is not permitted.  Miravich v. Township of Exeter, Berks County, 54 A.3d 106, 111-112 (Pa.Cmwlth. 2012) (citing, Carlino v. Whitpain Investors, 453 A.2d 1385, 1388 (Pa. 1982) ("Contracts…have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations")).

Finally, Plaintiff's proposed reading of the Settlement Agreement would also essentially nullify other key provisions of the Agreement, thereby violating fundamental rules of contract interpretation.  USX Corp. v. Liberty Mutual Ins. Co., 444 F.3d 192, 200 (3d Cir. 2006) (citing, Girard Trust Bank v. Life Ins. Co. of N. America, 364 A.2d 495, 498 (Pa. Super. 1976) ("Contract terms will not be construed in such a manner so as to render them meaningless.")).  Most notably, the Lease, which is part of the Settlement Agreement, specifically provides that Plaintiff "agrees to comply with all ordinances enacted by the City of Easton, in particular, the City of Easton Code".  (Lease, Addendum ¶ 11).  Yet, as set forth above, Plaintiff's selection of its "alternative acceptable site" on Centre Square would

***directly violate the Code***, rather than comply with it.  This provision would therefore be rendered entirely meaningless.  Additionally, the Lease requires Plaintiff to pay Defendant Easton rent beginning in the 11th year of the lease term and continuing thereafter for the balance of the 29 ½ year term.  Again, Plaintiff's interpretation, which involves an arrangement for a billboard on the property of a third party, would completely nullify Defendant Easton's rights to the income stream created under the Lease.

Based on all of the above, Count I of Plaintiff's Complaint must be dismissed for failure to state a claim for breach of contract.

> **B.     Count II of the Complaint should be dismissed because it fails to state a claim for an unconstitutional taking without due process or just compensation.**

Count II of the Complaint alleges that Defendant Easton's "unilateral actions in failing to recognize LVL's rights under the [Settlement] Agreement and provide LVL access to its acceptable alternative site is a taking of a property right without due process of law and without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the Commonwealth of Pennsylvania."  (Complaint ¶ 38).  Again, however, Plaintiff's allegations are legally insufficient to state a claim for an unconstitutional taking.

> **1.     Plaintiff fails to state a claim for the taking of property without due process.**

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Plaintiff does not specify whether it seeks relief on grounds of both procedural and substantive due process, instead merely vaguely referencing a "taking of a property right without due process of law".  (Complaint, Par. 38).  As an initial matter, such vague allegations are insufficient as a matter of law to state a claim based on violations of due process rights.  See, Campbell v. Conroy, 55 F.Supp.3d 750, 761-764 (W.D. Pa. 2014) (citing, Ashcroft v. Iqbal, 556 U.S. 662 (2009) (additional citations omitted)).

To the extent the Complaint is intended to encompass a substantive due process claim, it is utterly insufficient.   Substantive due process protects an individual against arbitrary action of the government. Wolff v. McDonnell, 418 U.S. 539, 558 (1974). However, the Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotation marks omitted). Official conduct is sufficiently outrageous only when it "shocks the conscience." Id. at 846-47.

Plaintiff has alleged no facts whatsoever which would give rise to a claim for a violation of substantive due process rights.   As a matter of law, Defendant Easton's refusal to accept the Centre Square site as a proposed billboard location cannot be considered arbitrary, egregious or outrageous in any sense, given the City Code which specifically prohibits billboards in that location, particularly when Plaintiff has signed a Lease expressly agreeing to comply with all such City Codes. The cursory allegation that Defendant Easton's failure to accept the proposed

Centre Square was "in bad faith, arbitrary and capricious" does nothing to change this conclusion.  See, Campbell, supra.  In short, any purported claim for violation of Plaintiff's substantive due process rights necessarily fails as a matter of law.

Plaintiff also fails to state a claim for any violation of procedural due process. In order to state a procedural due process claim, a plaintiff must allege: (1) that the defendant was acting under color of state law; (2) that the defendant deprived him of a property interest; and (3) that the state procedures for challenging the deprivation did not satisfy the requirements of procedural due process. Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by* United Artists Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (2003).  When a state affords a full judicial mechanism with which to challenge the decision at issue, it provides adequate procedural due process, irrespective of whether the plaintiffs avail themselves of that process.  DeBlasio v. Zoning Bd. Of Adjustment,53 F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by* United Artists, 316 F.3d 392; *see also* Midnight Sessions, 945 F.2d at 681 ("The availability of a full judicial mechanism to challenge the administrative decision to deny an application, even an application that was wrongly decided, preclude[s] a determination that the decision was made pursuant to a constitutionally defective procedure.").

Here, Plaintiff has completely failed to allege that Defendant Easton has deprived it of any established property interest or that there are insufficient state procedures for challenging any such alleged deprivation.  First, to the extent

Plaintiff asserts a property interest based on a purported right to put a billboard wherever it wants, it has already been established that no such right exists under either the Settlement Agreement, the Lease or the applicable zoning laws.   <u>See</u> discussion, <u>supra</u>.

Further, Plaintiff does not even purport to allege that the state does not provide an adequate means of challenging Defendant Easton's actions and any such assertion would clearly be baseless.   First, to the extent this is a dispute regarding the rights and obligations under the Settlement Agreement and/or Lease, the parties each have ready access to the judicial process[5] which can fully adjudicate their respective rights and obligations under those agreements.   <u>Ferrone v. Onorato</u>, 2007 WL 184815, *3 (W.D. Pa. Jan. 19, 2007) (ordinary judicial process in Pennsylvania for resolving contract disputes is all the process a party should receive).

In fact, Plaintiff has availed itself to the judicial process by commencing the within action.   Additionally, to the extent this is a dispute regarding compliance with, or relief from, the zoning laws of Defendant Easton, Plaintiff has ready access to the procedures provided in the Code for seeking a special exception or variance. Easton Code §§595-251 and 595-252.   Furthermore, and as discussed more fully below, to the extent Plaintiff has a viable claim for any unconstitutional taking of property rights without just compensation, Pennsylvania provides a full and

---

[5] In fact, the Settlement Agreement spells out in Section 10 (D), the process the parties may avail themselves of in the event of a dispute under the Settlement Agreement.

adequate procedure for adjudicating such claims pursuant to the Eminent Domain Code, 26 Pa.C.S.A. §101, et seq.  Irrespective of whether Plaintiff would have a viable claim in any of these fora, the fact remains that there are more than adequate means available to challenge Defendant Easton's actions.  As such, Plaintiff fails to state a claim for the taking of property rights without due process.

### 2.  Plaintiff fails to state a claim for the taking of property without just compensation.

Plaintiff likewise fails to state a claim for a taking of a property right without just compensation.  First and foremost, Plaintiff does not allege facts sufficient to establish a "taking" of any property right at all.   In the absence of direct condemnation proceedings (which indisputably are not implicated here), a "taking" of private property by a municipality may occur by inverse condemnation (*i.e.,* a *de facto* taking), either by an actual physical taking of the property (such as by occupation or destruction), or by regulatory or other action which eliminates or greatly diminishes the value of the property interest.   Whether by direct condemnation or inverse condemnation, however, Pennsylvania's Eminent Domain Code, 26 Pa.C.S.A. §101, et seq., provides the exclusive remedy for an alleged taking of private property for public use.   26 Pa.C.S.A. §102(a) ("This title provides the complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages."); *see also,* Fulmer v. White Oak Borough, 606 A.2d 589, 593-594 (Pa.Cmwlth. 1992) (where property has allegedly been taken by an exercise of eminent domain, whether it be a *de facto* taking or by

filing of a declaration, the only recourse is to proceed under the Eminent Domain Code); Ash v. Redevelopment Authority of Philadelphia, 143 Fed. Appx. 439, 441 (3d Cir. 2005) (same).

Plaintiff's Complaint purports to seek relief for an alleged unlawful taking of property without just compensation, but fails to even mention – much less state a claim under – the Pennsylvania Eminent Domain Code. Plaintiff has not alleged any physical taking of any property and has likewise failed to allege any action taken by Defendant Easton that has in any way affected any recognized property interest. As established above, Plaintiff's allegations fail to establish a claim for breach of contract that has in any way affected its use of the billboard at the present time.

Moreover, a mere breach of contract simply does not rise to the level of a *de facto* taking for purposes of establishing constitutional claims. Where, as here, the parties have freely entered into a contractual relationship – or where, as here, there is a dispute regarding whether a contractual obligation even exists between parties – it is the contract, not the Constitution, that governs their respective rights and liabilities. See, U.S. v. Thayer-West Point Hotel Co., 329 U.S. 585, 588-589 (1947) (Noting that "there is nothing more here than an ordinary contractual relationship between the United States and the respondent" and that, therefore, the government's liability to pay the hotel was fixed "by the lease, not by the Constitution.") Thus, a contractual dispute such as the one alleged by Plaintiff

simply fails to state a claim for an unconstitutional "taking" of property without just compensation.  See also, Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 318 (M.D. Pa. 2004) (Due Process Clause does not constitutionalize state contract claims).

Pennsylvania courts have applied similar reasoning in evaluating claims for *de facto* takings under the Eminent Domain Code.  In Moore v. Com. Dept. of Environmental Resources, the Pennsylvania Commonwealth Court stated that "[i]n order to find a *de facto* taking, a court must consider whether a government entity, clothed with the power of eminent domain, has by its conduct substantially deprived the property owner of the use and enjoyment of the property."  660 A.2d 677, 680 (Pa.Cmwlth. 1995) (citations omitted).  There, the plaintiff pursued compensation under an inverse condemnation theory based on the Department of Public Resources' (DER) claim to ownership of a parcel of land which the plaintiff also claimed to own.  The Court held that DER's claim to ownership – even though ultimately determined to be mistaken – was not in any way related to an exercise of its eminent domain powers and instead was merely a straightforward dispute regarding who held title to the property at issue.  As such, DER did not purport to act as a condemnor, but instead acted merely as the purported owner of the land. As such, the plaintiff's *de facto* taking claim failed as a matter of law.

Likewise, in the present case, Defendant Easton's refusal to consent to Plaintiff's demand to place a billboard in whatever location it wants– even if ultimately determined to be mistaken – nevertheless fails to provide a basis for a *de*

*facto* taking claim.    Plaintiff has alleged no facts whatsoever suggesting that Defendant Easton's actions were in any way taken "under the cloak of eminent domain powers", rather than solely as a party to the Settlement Agreement, which in no way obligated Defendant Easton to do what Plaintiff was demanding.    As established in the <u>Moore</u> case, this is legally insufficient to state a claim for an unlawful taking.

### 3. Plaintiff's assertion of an unlawful taking of property under the U.S. Constitution must be dismissed as premature.

Finally, because the exhaustion of state court remedies is a prerequisite to pursuing Plaintiff's claims under the U.S. Constitution, those claims likewise fail as a matter of law.  The Fifth Amendment to the U.S. Constitution, made applicable to state and local governments through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.  <u>Cowell v. Palmer Township</u>, 263 F.3d at 290.  However, before a Fifth Amendment takings claim is ripe, a plaintiff must seek and be denied just compensation under the state's procedures.  <u>Knick v. Township of Scott, et al.</u>, 862 F.3d 310 (3d Cir. 2017), *petition for certiorari granted*, 138 S.Ct. 1262 (2018)[6].  "If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause [of the Fifth Amendment] until it has used the procedure and been denied just compensation."  <u>Williamson County</u>

---

[6] <u>Knick</u> is set for oral argument before the United States Supreme Court on October 3, 2018. www.supremecourt.gov/oral_arguments.

<u>Regional Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 194 (1985).

As noted above, Plaintiff has not alleged that it has pursued any takings claim under the Pennsylvania Eminent Domain Code or been denied just compensation pursuant to such a claim.  As such, Plaintiff's takings claim under the Fifth and Fourteenth Amendments are not ripe and must be dismissed. Furthermore, because Plaintiff's due process claim is premised on its allegations relating to the purported unlawful taking, it too is not ripe and must be dismissed. <u>See</u>, <u>Ash v. Redevelopment Authority of Philadelphia</u>, 143 Fed. Appx. 439 (3d Cir. 2005), (<i>citing</i>, <u>Taylor Investment Ltd. V. Upper Darby,</u> 983 F.2d 1285, 1292-95 (3d Cir. 1993)).

## IV.    <u>Conclusion</u>

For all the reasons discussed above, Plaintiff's Complaint must be dismissed in its entirety.

NORRIS, MCLAUGHLIN & MARCUS, P.A.

By: <u> /s/ Steven E. Hoffman</u>
     Steven E. Hoffman, Esquire
     Attorney I.D. # 63911
     shoffman@nmmlaw.com
     515 West Hamilton Street, Suite 502
     Allentown, PA  18101
     Ph# 610-391-1800 Fax# 610-391-1805
     <i>Attorneys for Defendant</i>

23